**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID H. CHEREN; CATHERINE A. CONRAD CHEREN,<br><br>Plaintiffs,<br><br>v.<br><br>COMPASS BANK; BBVA COMPASS BANK; and DOES 1 through 10,<br><br>Defendants. | No. CV-12-00206-PHX-JAT<br><br>**ORDER** |

Pending before the Court are four motions. The first motion is Defendant's[1] Motion to Dismiss Plaintiffs' Complaint ("Motion") (Doc. 12). Plaintiffs have filed a Response (Doc. 13) and Defendant has filed a Reply (Doc. 16). The second motion before the Court is Plaintiffs' Notice of Motion and Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Doc. 15). The third motion before the Court is also titled Plaintiffs' Notice of Motion and Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure and is identical to the second motion. (Doc. 15). Defendant filed a Response to the third motion (Plaintiffs' second motion for sanctions) (Doc. 17) and Plaintiffs filed a Reply. (Doc. 18). The fourth motion before the Court is appropriately also titled Plaintiffs' Notice of Motion and Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure and is identical to

---

[1] As Defendant, Compass Bank, explained in its Motion, Defendants are a single entity for purposes of this order. (Doc. 12 at 1).

the second and third motions before the Court. (Doc. 19). The Defendant filed a Response to the fourth motion (Doc. 20) and Plaintiffs filed a Reply. (Doc. 21). The Court now grants the Defendant's Motion and dismisses Plaintiffs' Complaint with leave to amend. Further, the Court denies all three of Plaintiffs' motions for sanctions.

**I.     BACKGROUND**

In early 2011, Plaintiffs applied for a mortgage loan with Defendant for the purchase of a condominium in Mexico. (Doc. 1 at 3). On April 7, 2011, Defendant issued a conditional letter of approval for the loan. (Doc. 1-1 at 5). The conditional letter of approval describes the property address as "Rosarito Tijuana, MX" and "condominium." (*Id.*) It states the loan amount as $378,750.00. (*Id.*) The letter requested "proof of down payment" and "contract" from the Plaintiffs, which Plaintiffs allege they provided. (Doc. 1 at 3). On April 12, 2011, a mortgage officer for Defendant sent an email to Plaintiffs under the subject "Approval Letter". (Doc. 1-1 at 2). In the email, the mortgage officer: stipulates the loan amount as "L/A $378,750.00 (I did it at the maximum but you can apply as much as you want –let me know at what amount you want to leave your loan at)"; quotes the interest at a fixed 30 year program at 7.50%; asks Plaintiffs to let the mortgage officer know if they accept the terms and to submit further paperwork; allows for Plaintiffs to choose other financing options for their mortgage; and asks the Plaintiffs to let the mortgage officer know if they would prefer one of the alternate programs. (*Id.*) Plaintiffs allege they completed everything asked of them by Defendant for processing the loan. (Doc. 1 at 4). On August 9, 2011, Plaintiffs claim the parties signed an Escrow Agreement for the mortgage and Plaintiffs allege they authorized Defendant to transfer $333,000.00 to a U.S. Title Company to be deposited into the escrow account. (*Id.*) Then, around November 7, 2011, Plaintiffs contend that Defendant refused to provide the mortgage funds. (*Id.* at 5). Further, Plaintiffs claim Defendant explained to them that Plaintiffs would be required to apply for a new loan or re-apply for a loan under different conditions because Defendant said Plaintiffs did not qualify for a loan under newly imposed conditions for loan approval. (*Id.*) Plaintiffs

allege that Defendant holds and refuses to provide all relevant documents relating to the loan application signed by the Plaintiffs. (*Id*. at 6). On January 30, 2012, Plaintiffs filed their Complaint. (Doc. 1). Plaintiffs Complaint alleges breach of contract and breach of the covenant of good faith and fair dealing due to Defendant's refusal to complete the loan process and by attempting to impose new conditions on approval of a loan. (*Id*.) Plaintiffs have attached the conditional approval sent by Defendant on April 7, 2011, and the email sent on April 12, 2011, to the Complaint. Defendant has filed this Motion to dismiss the Complaint arguing Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 12).

## II.     DEFENDANT'S MOTION TO DISMISS (Doc. 12)

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*.

Rule 8's pleading standard demands more than "an unadorned, the-defendant unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than blanket assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Id*. Facial plausibility exists if the pleader pleads factual content that allows the

1  court to draw the reasonable inference that the defendant is liable for the misconduct
2  alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than
3  a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads
4  facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line
5  between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550
6  U.S. at 557).

7  In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the
8  facts alleged in a complaint in the light most favorable to the drafter of the complaint, and
9  the Court must accept all well-pleaded factual allegations as true. *Shwarz v. United*
10 *States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept
11 as true a legal conclusion couched as a factual allegation, *Papasan*, 478 U.S. at 286, or an
12 allegation that contradicts facts that may be judicially noticed by the Court. *Shwarz*, 234
13 F.3d at 435; *see also Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987)
14 ("facts subject to judicial notice may be considered on a motion to dismiss"). In deciding
15 a motion to dismiss the Court "may consider documents that are referred to in the
16 complaint whose authenticity no party questions." *Shwarz*, 234 F.3d at 435. The Court
17 also notes, because Plaintiffs are proceeding *pro se* in this case, the Court must construe
18 their complaint liberally, even when evaluating it under the *Iqbal* standard. *Johnson v.*
19 *Lucent Techs. Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011).

20 In this case, Plaintiffs' claims of breach of contract and breach of the covenant of
21 good faith and fair dealing presuppose the existence of a valid contract. Thus, Plaintiffs'
22 Complaint must allege enough facts, which the Court will accept as true, and these facts
23 must prove that the essential elements of a valid contract existed. The Court can consider
24 facts from documents referred to in the Complaint whose authenticity no party questions.
25 If, however, the Plaintiffs have not pleaded enough facts to show the existence of a valid
26 contract, Plaintiffs' claims of breach of contract and breach of the covenant of good faith
27 and fair dealing become not only implausible but impossible. Under the standard
28 delineated in *Iqbal*, this would require the Court to grant Defendant's Motion. No party

questions the authenticity of the conditional approval and email dated April 12, 2011 ("April 12 Email"). Further, the Court must take allegations of fact made by the Plaintiffs in the Complaint as true. Accordingly, in deciding this motion, the Court accepts as true Plaintiffs' statements that they provided the requested documents in the conditional approval (Doc. 1 at 3), and that Plaintiffs performed all conditions, covenants and promises required of them. (*Id*. at 4).

### A. Minimum Requirements for an Enforceable Mortgage Contract

The burden is upon the proponent to prove all the essential elements of an enforceable contract. *Malcoff v. Coyier*, 484 P.2d 1053, 1055 (Ariz. Ct. App. 1971). Generally, the minimum requirements for an enforceable contract are an offer, an acceptance, consideration, and adequate specification of terms so that the obligations involved can properly be ascertained. *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991). The nature of the contract at issue may also augment the minimum requirements. Some contracts are subject to the statute of frauds and must be in writing and signed by parties to the contract in order to be enforced. *See* Ariz. Rev. Stat. § 44–101. The contract at issue here is a mortgage contract. Arizona law defines a mortgage as "every transfer of an interest in real property . . . made only as a security for the performance of another act." Ariz. Rev. Stat. § 33-702. Plaintiffs attempted to transfer an interest in real property as a security in order to induce Defendant to loan them approximately $378,750.00. (*See* Doc. 1). Mortgage contracts are subject to the statute of frauds as discussed below. *See* Ariz. Rev. Stat. § 44–101(6). Accordingly, the Court must determine if the facts alleged by the Plaintiffs fulfill the minimum requirements to form an enforceable mortgage contract. For the alleged mortgage contract in this case, the central issues are whether any mortgage contract created satisfied the statute of frauds and included adequately specific terms.

### 1. Mortgage Contracts are Subject to the Statute of Frauds

The mortgage contract here does not satisfy the statute of frauds because it is not signed by the Plaintiffs and therefore does not bind them to any obligations. A

fundamental precept of an enforceable mortgage contract was explained by the United States Supreme Court when it said "[i]t is, therefore, a necessary ingredient in a mortgage, that the mortgagee should have a remedy against the person of the debtor." *Conway's Ex'rs & Devisees v. Alexander*, 11 U.S. 218 (1812). In order for the lender, or mortgagee, to have any remedy against the debtor the debtor must have signed the contract. Arizona's Statute of Frauds, codified at Arizona Revised Statutes § 44–101, provides, in relevant part:

> No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized . . . . Upon an agreement . . . for the sale of real property or an interest therein.

Ariz. Rev. Stat. § 44–101(6); *Owens v. M.E. Schepp Ltd. P'ship*, 182 P.3d 664, 667 (Ariz. 2008). In Arizona, a mortgage is "an interest" in real property for purposes of the Statute of Frauds. *Freeming Const. Co. v. Sec. Sav. & Loan Ass'n*, 566 P.2d 315, 317 (Ariz. Ct. App. 1977). Therefore, if any mortgage contract existed between Plaintiffs and Defendant it must be in writing and signed by the debtor, i.e. the Plaintiffs.

Plaintiffs have not claimed they signed a mortgage contract. Plaintiffs have only claimed that Defendant has refused to turn over "all documents" signed by Plaintiffs "relating to the loan application." (Doc. 1 at 6). To find for the Plaintiffs the Court would first have to make the inference that these documents include a signed mortgage contract. Even then, the allegation that Defendant is holding signed documents relating to the loan application, if the Court accepts it as true, only makes the existence of a signed mortgage contract somewhere possible. This does not move the existence of a signed mortgage contract from the realm of possibility into plausibility.

Instead of arguing a signed mortgage contract exists, Plaintiffs central argument is that the conditional approval and April 12 Email constitute the binding contract at issue. (Doc. 13 at 2). This is a legal conclusion couched as a factual allegation, which the Court

need not take as true. *See Papasan*, 478 U.S. at 286.  In considering the conditional approval and email in order to determine if a binding contract exists, the Court notes that Plaintiffs' signatures are conspicuously absent.  So while Plaintiffs argue that the conditional approval and email effectively act as the Defendant's signature, and, if a contract existed, an action could be brought against Defendant, Plaintiffs have neither shown nor alleged that they signed what constitutes the contract they now seek to enforce.  Without Plaintiffs' signature on the documents Plaintiffs claim form a binding contract, Defendant is barred from enforcing any agreement the parties allegedly had.  This prevents Defendant from having any remedy against Plaintiffs because Plaintiffs are not bound to perform on the alleged contract.  Under Arizona law "[m]utuality of obligation is a requirement for a valid contract; however, mutuality is absent when only one of the contracting parties is bound to perform." *Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. 1986) (quoting *Keck v. Brookfield*, 409 P.2d 583, 586 (Ariz. Ct. App. 1965)).  Because there is no binding obligation for the Plaintiffs here, under Arizona's Statute of Frauds there is no enforceable contract.

### 2. Mortgage Contracts Require Adequate Specification of Terms

Moreover, even if the contract had been signed, the mortgage contract in this case does not adequately specify enough terms to be enforceable.  "The object of all rules of interpretation is to arrive at the intention of the parties as expressed in the contract." *Phelps Dodge Corp. v. Brown*, 540 P.2d 651, 653 (Ariz. 1975).

> While the primary purpose of any judicial interpretation of a contract is to ascertain the parties' intentions, it is the duty of the trial court in the first instance to determine if the parties intended the writing to be a complete and accurate integration of the terms of their agreement.  A presumption exists that a contract complete on its face integrates the final intention of the parties, but the presumption does not apply when the writing is ambiguous or uncertain.

*United Cal. Bank v. Prudential Ins. Co. of America*, 681 P.2d 390, 413 (Ariz. Ct. App. 1983) (citations omitted).  "The requirement of reasonable certainty of terms arises from

the inescapable fact that the uncertainty of the promises may indicate that a proposal or acceptance was not intended to be understood as a binding offer or acceptance." *Schade v. Diethrich*, 760 P.2d 1050, 1058 (Ariz. 1988); *see also Malcoff*, 484 P.2d at 1055 ("If the terms are ambiguous and uncertain there is no contract . . . ."). "The requirement of certainty is relevant to the ultimate element of contract formation, i.e., whether the parties manifested assent or intent to be bound. *Rogus*, 804 P.2d at 135 (quoting *Schade*, 760 P.2d at 1058). In essence the Court is charged with determining whether the parties showed an intent to be bound by the writing presented to the Court. The less certain the terms in the writing are, the less it shows the parties intended to be bound by that writing. "The more important the uncertainty [is to the contract at issue], the stronger the indication is that the parties [did] not intend to be bound." Restatement (Second) of Contracts § 33 cmt. f (1981).

In a mortgage contract the property at issue must be identified to meet the "adequate specification of terms" requirement. The property at issue is central to a mortgage contract for that property. Any uncertainty in the description of the property, in a writing purporting to be a mortgage contract, is a strong indication that something more was expected before the parties intended to be bound. In that case, the writing at issue would not be enough to express the intent of the parties and would not be enforceable. The Arizona Supreme Court has said, "[i]t is necessary, of course, that a description of the particular property intended to be charged with the payment of a debt be such as to identify it or furnish the means of its identification." *Gamble v. Consol. Nat. Bank of Tucson*, 262 P. 612, 613 (Ariz. 1928).

> Generally, a mortgage is effective if the description of the property is sufficiently definite to enable the land to be located. On the other hand, a grossly inadequate description of the property is a substantive defect making the instrument unenforceable. Thus, if the description is lacking or is so indefinite or uncertain that the property cannot be identified, or if it calls for premises which have no existence or which cannot possibly be found, the mortgage will be invalid unless

>reformed.
>
>The office of the description, however, is not so much to identify the property conveyed as to furnish the means of its identification. Although it is vague or indefinite, it will not render the mortgage inoperative if it contains data from which a certain description can be made out or by the aid of extraneous evidence it can be amplified and applied with certainty to its intended subject.
>
>. . . .
>
>The fact that the description of property covered by a mortgage is expressed only in broad, general terms instead of being specific will not necessarily invalidate the mortgage since such a description may afford the means of positive identification, and that is all that is necessary. A general description may be restricted or controlled by a particular description, but a particular description which is vague and uncertain must yield to a general description which is definite and certain.

59 C.J.S. *Mortgages* § 146 (2012) (footnotes omitted).

Here, the property at issue is described with no greater specificity than "condominium" in "Rosarito Tijuana, MX". (Doc 1-1 at 5). The conditional approval and email do not refer the reader to any extraneous source to identify the actual address of the property or furnish any means of its identification. The Court finds this description of the security for a loan, which is nothing more than an unidentified condominium in Rosarito, Mexico, an inadequate specification of a central term to make this writing an expression by witch both parties intended to be bound.

The vague description of the property in the writing relied on by Plaintiffs is symptomatic of the weaknesses of their claim. The property description, the additional financing options in the April 12 Email (Doc. 1-1 at 2), the specified loan amount of $378,750 that Plaintiffs allege was reduced to $333,000 (Doc. 1 at 4), and the lack of signatures as discussed, are all factors indicative to the Court of an intent by at least Defendant to communicate further before reducing the parties' agreement to an enforceable writing. Therefore, without more, the Court finds the Complaint does not allege enough facts to plausibly indicate that a mortgage contract existed between

Plaintiffs and Defendant.

### B. Breach of Contract Claim

"In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff." *Warren v. Sierra Pac. Mortg. Servs. Inc.*, No. 10–02095, 2011 U.S. Dist. WL 1526957, at *3 (D. Ariz. Apr. 22, 2011) (citing *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004)); *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Plaintiffs have failed to allege sufficient facts that they have a breach-of-contract claim against Defendants which is "plausible on its face" under the *Twombly* and *Iqbal* standard. The Complaint fails to affirmatively plead that a valid and binding mortgage agreement was reached and executed by Defendant. Without a valid contract there can be no breach of that contract.

### C. Breach of Covenant of Good Faith and Fair Dealing Claim

"Under Arizona law, the covenant of good faith and fair dealing is implied in every contract, and the 'duty arises by virtue of a contractual relationship.'" *Silving v. Wells Fargo Bank, NA*, 800 F.Supp.2d 1055, 1070 (D. Ariz. 2011) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id*. at 1071. "Accordingly, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. Ct. App. 2004). Here, the parties did not finalize an agreement to do anything because no contract existed. No duty was created because there was no right created for either party. Without a duty, Defendant could not breach the covenant of good faith and fair dealing alleged by Plaintiffs.

### D. Leave to Amend

In this case, Plaintiffs have not amended, nor sought leave to amend, their Complaint as a matter of right under Rule 15 of the Federal Rules of Civil Procedure. Because the twenty-one day time frame to file an amendment following a motion to

dismiss has expired, Plaintiffs have lost their right to amend their complaint as a matter of course. Fed. R. Civ. P. 15(a)(1). While previous precedent from the Ninth Circuit Court of Appeals instructed that district courts should grant leave to amend *sua sponte* when granting a motion to dismiss, the Court of Appeals has recently called that precedent into question in light of the recent revision of the Federal Rule of Civil Procedure 15. *See Lacey v. Maricopa County*, ___ F.3d ___, 2012 WL 3711591, at *19 (9th Cir. Aug. 29, 2012). However, because it appears that Plaintiffs could possibly state enough facts to state a claim upon which relief can be granted, the Court will allow Plaintiffs to file an amended complaint.

Plaintiffs are reminded that the Court will only consider the amended complaint as the operative pleading. An amended complaint must stand on its own. The Court will not incorporate by reference any exhibits, factual allegations, or legal claims made in prior versions of the complaint. *See* LRCiv 15.1 ("The proposed amended pleading is not to incorporate by reference any part of the preceding pleading, including exhibits"). Plaintiffs are forewarned that if they elect to file an amended complaint and it fails to comply with the Court's instructions or case law explained in this order, the action will be dismissed with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal with prejudice of prolix, argumentative, and redundant amended complaint that did not comply with Rule 8(a)); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673–74 (9th Cir. 1981) (affirming dismissal of amended complaint that was "equally as verbose, confusing, and conclusory as the initial complaint"); *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965) (affirming dismissal without leave to amend of second complaint that was "so verbose, confused and redundant that its true substance, if any, [was] well disguised").

**III.   PLAINTIFFS' MOTIONS FOR SANCTIONS (Doc. 14), (Doc. 15), (Doc. 19)**

On March 23, 2012, Plaintiffs filed their first motion for sanctions. (Doc. 14). Plaintiffs then filed a second identical motion for sanctions on the same day. (Doc. 15).

It appears this second motion was filed erroneously by Plaintiffs when they attempted to simultaneously serve Defendant with the first motion. (*See* Doc. 18 at 3). Defendant's counsel then attempted to communicate with Plaintiffs and clarify what actions Defendant had taken that warranted the motion for sanctions, asked Plaintiff to withdraw the motion for sanctions for failure to state an actionable claim warranted by existing law, and advised Plaintiffs that Defendant may ask for attorney's fees for having to oppose Plaintiffs' motion for sanctions. (Doc. 17-1 at 2). Four months later, on July 24, 2012, and now informed of potential consequences, Plaintiffs intentionally filed a third identical motion for sanctions.[2] (Doc. 19). Defendant was compelled to file two Responses to these three motions for sanctions. (Doc. 17); (Doc. 20). Defendant in its Response (Doc. 17 at 1-2) and at oral argument on October 29, 2012, requested that Plaintiffs reimburse Defendant for the attorney's fees incurred in responding to Plaintiffs' motions. The Court finds this to be a reasonable and warranted request by Defendant.

Filing a complaint against another party in order to receive a judicial remedy is what our judicial system is designed to facilitate. Filing a separate motion for sanctions against an attorney defending against the complaint is an entirely separate issue. The courts "reserve sanctions for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co*., 859 F.2d 1336, 1344 (9th Cir. 1988). "The central purpose of Rule 11 is to deter baseless filings." *Newton v. Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994). Rule 11 justifies sanctions "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of L.A*., 120 F.3d 982, 985 (9th Cir. 1997). A "frivolous" filing is one that is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp*., 929 F.2d 1358, 1362 (9th

---

[2] The Court notes that Plaintiffs even re-signed and dated this third motion for sanctions (*Id*. at 5) (re-dated "July 2, 2012"), as evidence that this third motion was not mistakenly filed and Plaintiffs intended to file multiple identical motions for sanctions.

- 12 -

Cir. 1990). Even if this Court had denied Defendant's Motion to Dismiss, which it has not, Defendant's argument is not baseless nor made without a reasonable and competent inquiry. Making the argument that the Conditional Approval and April 12 Email do not constitute a binding contract is clearly "warranted by existing law." Fed. R. Civ. P. 11(b)(2). Accordingly, Plaintiffs' motions for sanctions are denied.

Defendant, however, should not be forced to pay to defend against Plaintiffs' repeated motions for sanctions. Plaintiffs forced Defendant to defend itself by filing the Complaint in the first place. Defendant reasonably and effectively defended itself. Plaintiffs were given the opportunity to withdraw their initial motion for sanctions, but instead, Plaintiffs filed an additional motion for sanctions. Rule 11 explicitly protects prevailing parties from frivolous motions for sanctions such as these. Under Rule 11, "if warranted, the court may award the prevailing party [in a motion for sanctions] the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). The Court recognizes that Plaintiffs are proceeding without counsel. The Court also notes that Plaintiff, David Cheren, has been an attorney for over thirty years.[3] Even if the Court were to ignore Plaintiffs' experience, the Court may not decline sanctions solely because a party is *pro se*. *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) ("We first note that [Rule 11] explicitly applies to parties not represented by attorneys. The district court is therefore not at liberty to exempt automatically such persons from the rule's requirements. Secondly, Rule 11's express goal is deterrence . . ."). The Court does not look to punish Plaintiffs, the Court only looks to make Defendant whole again after defending against the multiple motions for sanctions. Defendant requests $1000 for attorney's fees and says it will file an application for attorney's fees to justify this amount. (Doc. 17 at 9). Accordingly, the Court grants Defendant's request for attorney's fees.

---

[3] As Defendant points out and Plaintiffs have not denied, Plaintiff David Cheren was admitted to practice law in California in January 1969 and is currently an active member of the state bar of California. (Doc. 17 at 3 n. 1).

- 13 -

## VI. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** granting Defendant's Motion to Dismiss (Doc. 12). Plaintiffs may file an amended complaint within twenty-one (21) days from the date of this order; if Plaintiffs fail to file an amended complaint within this deadline, the Clerk of the Court shall enter judgment, dismissing this case with prejudice.

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Sanctions (Doc. 14).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Sanctions (Doc. 15).

**IT IS FINALLY ORDERED** denying Plaintiffs' Motion for Sanctions (Doc. 19) and granting Defendant's request for attorney's fees. Defendant shall file an application for attorney's fees within seven (7) days from the date of this order.

Dated this 2nd day of November, 2012.

_____
James A. Teilborg
United States District Judge