**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David H. Cheren; Catherine A. Conrad Cheren,<br><br>Plaintiffs,<br><br>v.<br><br>Compass Bank; BBVA Compass Bank; and Does 1 through 10,<br><br>Defendants. | No. CV-12-00206-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant's[1] Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") (Doc. 30) and Motion to Strike Plaintiffs' Response as Untimely (Doc. 31). The Court now rules on the motions.

**I.    BACKGROUND**

In early 2011, Plaintiffs applied for a mortgage loan with Defendant for the purchase of a condominium in Mexico. (Doc. 27 at 3). On April 7, 2011, Defendant issued a conditional letter of approval for a loan of $378,750.00 for 360 months at a rate of 7.5% with monthly payments of $2,648.27. (*Id.*) The letter requested "proof of down payment" and "contract" from the Plaintiffs, which Plaintiffs allege they provided. (*Id.*) On April 12, 2011, a mortgage officer for Defendant sent an email to Plaintiffs in which the mortgage officer: stipulates the loan amount as "L/A $378,750.00 (I did it at the

---

[1] As Defendant, Compass Bank, explained in its Motion, Defendants are a single entity for purposes of this order. (Doc. 30 at 1).

maximum but you can apply as much as you want –let me know at what amount you want to leave your loan at)"; quotes the interest at a fixed 30 year program at 7.50%; asks Plaintiffs to let the mortgage officer know if they accept the terms and to submit further paperwork; allows for Plaintiffs to choose other financing options for their mortgage; and asks the Plaintiffs to let the mortgage officer know if they would prefer one of the alternate programs. (*Id.*) Plaintiffs allege they completed everything asked of them by Defendant for processing the loan. (*Id.* at 5).

On June 28, 2011, Plaintiffs allege they received the fideicomiso (Doc. 27 at 3), a Bank Trust in which foreigners must acquire a beneficial interest in order to establish ownership rights to real property in Mexico. (Doc. 30 at 4). On June 29, 2011, the mortgage officer emailed Plaintiffs that the "maximum loan amount will be $333,000.00." (Doc. 27 at 20). Plaintiffs allege they accepted the offer of a loan for $333,000.00, confirmed by this June 29, 2011 email. (*Id.* at 3). Plaintiffs allege that, following this acceptance, Defendant directed them to open an escrow account at Stewart Title Company and prepared escrow documents that "set forth the material terms of the loan contract between the parties." (*Id.* at 4).

On August 8, 2011, Plaintiffs allege they submitted the following signed, original documents to Defendant: the promissory note, the loan agreement, the notice of non-oral agreement, the initial escrow account disclosure, and the borrowers' proof of the required hazard insurance. (*Id.*) On August 9, 2011, Plaintiffs, the seller, and the escrow agent signed an Escrow Agreement for the mortgage. (*Id.*) Plaintiffs signed letters dated August 9 and 10, 2011 authorizing Defendant to transfer $333,000.00 USD to Stewart Title to be deposited into the escrow account and $119,076.31 Pesos MX to Andrade E Illades S.C. as "payment of the acquisition tax, registration and notario fee," respectively. (*Id.* at 28, 30). On August 10, 2011, Plaintiffs and the mortgage officer exchanged emails regarding disbursement of the loan funds, the steps Plaintiffs must take to close, and the scheduling of a closing date for some time after August 19, 2011. (*Id.* at 50, 52). On August 18, 2011, the mortgage officer forwarded Plaintiffs an email in Spanish that provides the

1  breakdown of closing costs and a budget, including the purchase price of $504,158.00
2  and the loan of $333,000.00. (*Id.* at 47).

3  Then, around November 7, 2011, Plaintiffs contend that Defendant refused to provide the mortgage funds. (*Id.* at 6). Further, Plaintiffs claim Defendant explained to them that Plaintiffs would be required to apply for a new loan or re-apply for a loan under different conditions because Defendant said Plaintiffs did not qualify for a loan under newly imposed conditions for loan approval. (*Id.*) Plaintiffs allege that Defendant holds and refuses to provide all relevant documents relating to the loan application signed by the Plaintiffs. (*Id.*) In January 2012, Plaintiffs allege they were informed that Defendant was no longer offering loans on property located in Mexico, so Plaintiffs did not have the necessary funds to complete the purchase. (*Id.* at 6-7).

On November 16, 2012, Plaintiffs filed their FAC. (Doc. 27). Plaintiffs' FAC alleges breach of contract and breach of the implied covenant of good faith and fair dealing due to Defendant's refusal to complete the loan process and by attempting to impose new conditions on approval of a loan. (*Id.*) Plaintiffs have attached the following documents to the FAC: the conditional letter of approval, the April 12, 2011 email, the June 29, 2011 email, the fideicomiso, the August 9, 2011 email, the August 10, 2011 email, the August 9 and 10, 2011 letters approving wire transfers, the August 12, 2011 email, the unit amendment agreement, the escrow agreement, Exhibit A to the escrow agreement, and the August 18, 2011 email. Defendant has filed this Motion to Dismiss Plaintiff's First Amended Complaint arguing Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 30).

**II.  DEFENDANT'S MOTION TO DISMISS**

**A.  Legal Standard**

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it

rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.*

Rule 8's pleading standard demands more than "an unadorned, the-defendant unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than blanket assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Id.* Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in a complaint in the light most favorable to the drafter of the complaint, and the Court must accept all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation, *Papasan*, 478 U.S. at 286, or an allegation that contradicts facts that may be judicially noticed by the Court. *Shwarz*, 234 F.3d at 435; *see also Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987) ("facts subject to judicial notice may be considered on a motion to dismiss"). In deciding

a motion to dismiss the Court "may consider documents that are referred to in the complaint whose authenticity no party questions." *Shwarz*, 234 F.3d at 435. The Court also notes, because Plaintiffs are proceeding *pro se* in this case, the Court must construe their complaint liberally, even when evaluating it under the *Iqbal* standard. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011).

### B. Breach of Contract Claim

"In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff." *Warren v. Sierra Pac. Mortg. Servs. Inc.*, No. 10–02095, 2011 U.S. Dist. WL 1526957, at *3 (D. Ariz. Apr. 22, 2011) (citing *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004)); *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Thus, Plaintiffs' FAC must allege enough facts, which the Court will accept as true, to prove that the essential elements of a valid contract existed.

Defendant argues that "Plaintiffs have not identified a signed writing that obligates Plaintiffs to accept a loan from Compass Bank, that gives Compass Bank a remedy against Plaintiffs if they fail to repay it, nor a signed writing that provides the essential loan terms." (Doc. 30 at 1). No party questions the authenticity of the exhibits attached to the FAC; therefore, the Court may consider those documents when determining if Plaintiffs pleaded sufficient factual matter to make their claims plausible. If, however, the Plaintiffs have not pleaded enough facts to show the existence of a valid contract, Plaintiffs' claims of breach of contract and breach of the covenant of good faith and fair dealing become not only implausible but impossible. Under the standard delineated in *Iqbal*, this would require the Court to grant Defendant's Motion.

#### 1. Minimum Requirements for an Enforceable Mortgage Contract

The burden is upon the proponent to prove all the essential elements of an enforceable contract. *Malcoff v. Coyier*, 484 P.2d 1053, 1055 (Ariz. Ct. App. 1971). Generally, the minimum requirements for an enforceable contract are an offer, an

acceptance, consideration, and adequate specification of terms so that the obligations involved can properly be ascertained. *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991). The nature of the contract at issue may also augment the minimum requirements. The contract at issue here is a mortgage contract. Arizona law defines a mortgage as "every transfer of an interest in real property . . . made only as a security for the performance of another act." Ariz. Rev. Stat. Ann. § 33-702. Plaintiffs attempted to transfer an interest in real property as a security in order to induce Defendant to loan them approximately $333,000.00. (*See* Doc. 27). Mortgage contracts are subject to the statute of frauds and must be in writing and signed by parties to the contract in order to be enforced. *See* Ariz. Rev. Stat. Ann. § 44–101(6). Accordingly, the Court must determine if the facts alleged by the Plaintiffs fulfill the minimum requirements to form an enforceable mortgage contract.

### a. Offer, Acceptance, and Consideration

Plaintiffs must allege facts sufficient to show that an offer, an acceptance, and consideration exist in order to establish a mortgage contract. *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991). An offer is "a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *K-Line Builders, Inc. v. First Federal Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983) (quoting Restatement (Second) of Contracts § 24 (1981)). An acceptance is "a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Id.* (quoting Restatement (Second) of Contracts § 50 (1981)). Consideration is a benefit to the promisor or a loss or detriment to the promisee. *Id.*

In the FAC, Plaintiffs allege that they "accepted the offer of a loan of $333,000.00 from Defendant as confirmed in the mortgage officer's email of June 29, 2011." (Doc. 27 at 3-4). This statement regarding the existence of an offer and an acceptance is a legal conclusion couched as a factual allegation, which the Court is not required to accept as true. *Papasan*, 478 U.S. at 286. In the email, Defendant notified Plaintiffs that the bank

will only finance up to 75% of the commercial price of the property and that "the *maximum* loan amount will be $333,000." (Doc. 27 at 20) (emphasis added). This correspondence establishes the maximum amount of the loan, not the final amount agreed upon. Therefore, the parties were still negotiating and Defendant had not made an offer. Because Defendant did not make an offer, there were no terms for Plaintiffs to accept. Accordingly, Plaintiffs did not allege sufficient facts to establish an offer, an acceptance, and consideration.

### b.     Adequate Specification of Terms

Even if Plaintiffs had sufficiently alleged an offer, an acceptance, and consideration to establish a contract, the mortgage contract in this case does not adequately specify enough terms to be enforceable. "The object of all rules of interpretation is to arrive at the intention of the parties as expressed in the contract." *Phelps Dodge Corp. v. Brown*, 540 P.2d 651, 653 (Ariz. 1975). "The requirement of reasonable certainty of terms arises from the inescapable fact that the uncertainty of the promises may indicate that a proposal or acceptance was not intended to be understood as a binding offer or acceptance." *Schade v. Diethrich*, 760 P.2d 1050, 1058 (Ariz. 1988); *see also Malcoff*, 484 P.2d at 1055 ("If the terms are ambiguous and uncertain there is no contract . . . ."). "The requirement of certainty is relevant to the ultimate element of contract formation, i.e., whether the parties manifested assent or intent to be bound. *Rogus*, 804 P.2d at 135 (quoting *Schade*, 760 P.2d at 1058). In essence, the Court is charged with determining whether the parties showed an intent to be bound by the writing presented to the Court. The less certain the terms in the writing are, the less it shows the parties intended to be bound by that writing. "The more important the uncertainty [is to the contract at issue], the stronger the indication is that the parties [did] not intend to be bound." Restatement (Second) of Contracts § 33 cmt. f (1981).

Here, Plaintiffs refer to several exhibits attached to the FAC that include terms of the conditionally approved loan. (Doc. 27 at 3; *See* Exhibits B, D, and E). Exhibit B is the April 7, 2011 letter from the mortgage officer to Plaintiffs that informs Plaintiffs the loan

for $378,750.00 was conditionally approved, "subject to [Defendants] receipt and verification of additional information." (Doc. 27 at 12). The letter identifies the property address as "Rosarito Tijuana, MX" and describes the terms of the loan as 360 months at 7.5% with monthly payments of $2,648.27. (*Id.*) Exhibit D is an email dated April 12, 2011, which demonstrates that the terms were still negotiable because the mortgage officer asked Plaintiffs to "let [him] know what amount [they] want to leave [their] loan at." (*Id.* at 17). The email stated that Plaintiffs were approved for $378,750.00 on a "fixed 30 year program at 7.50%," but the mortgage officer also offered two other financing options for Plaintiffs to consider. (*Id.*) Exhibit E, the June 29, 2011 email, provides further evidence that the terms provided in the conditional approval were tentative. As discussed above, the June 29, 2011 email informs Plaintiffs that the maximum loan they qualify for is $333,000.00. (*Id.* at 20). Collectively, the correspondence establishes that the terms of the loan were not final in the conditional letter of approval. Even assuming there is a mortgage contract, Plaintiffs did not adequately specify the terms agreed upon that would demonstrate both parties' intent to be bound.

Plaintiffs allege that the escrow instructions and other documents prepared for escrow "set forth all of the material terms of the loan contract between the parties." (*Id.* at 4). The Escrow Agreement and Exhibit A to the Escrow Agreement, attached to the FAC, include the property description and state that $333,000.00 will be disbursed by the escrow agent subject to the Agreement. (*Id.* at 34, 42). However, neither document includes the final terms for repayment of the loan, nor is signed by Defendant. Moreover, "an escrow primarily is a conveyancing device designed to carry out the terms of a binding contract of sale previously entered into by the parties." *Young v. Bishop*, 353 P.2d 1017, 1021 (Ariz. 1960). Thus, even if including the property description and the loan amount constituted an adequate specification of terms, an escrow agreement is not an enforceable mortgage contract.

Furthermore, Plaintiffs do not allege that the loan agreement ever consummated at a loan closing. The closing date for a loan is an important term because loans

consummate at closing. *See e.g. Weintraub v. Quicken Loans, Inc.*, 594 F.3d 270, 272 (4th Cir. 2010) (Because plaintiffs "withdrew their loan application prior to closing, the loan between the [plaintiffs] and Quicken Loans was never consummated"); *Richter v. Banc One Mortg. Corp.*, 1999 U.S. Dist. LEXIS 16074, at *8 (D. Ariz. Mar. 19, 1999) ("At [t]he closing in October of 1995, Banc One funded the loan and was designated as lender on the mortgage and note"). Plaintiffs allege that Defendant suggested a closing date of August 22, 2011. (Doc. 27 at 5). This allegation is contradicted by emails Plaintiffs attached to the FAC as Exhibit K. In this email thread from August 12, 2011, the mortgage officer suggested a closing date of August 19, 2011. (Doc. 27 at 54). Plaintiffs responded that they could come to Tijuana to sign all the documents and "close Escrow on Monday the 22nd of August or any other day that week." (*Id.*) These emails demonstrate that, as of August 12, no closing date was set; therefore, this term could not have been included in the alleged agreements signed prior to that date. Moreover, Plaintiffs do not allege that the loan ever closed, consummating the mortgage transaction. Therefore, Plaintiffs do not allege adequate specification of terms to plausibly indicate that a mortgage contract existed between Plaintiffs and Defendant.

### c.     **Statute of Frauds**

The United States Supreme Court explained a fundamental precept of an enforceable mortgage contract by stating: "It is, therefore, a necessary ingredient in a mortgage, that the mortgagee should have a remedy against the person of the debtor." *Conway's Ex'rs & Devisees v. Alexander*, 11 U.S. 218, 237 (1812). In order for the lender, or mortgagee, to have any remedy against the debtor, the debtor must have signed the contract. Arizona's Statute of Frauds, codified at Arizona Revised Statutes § 44–101, provides, in relevant part:

> No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized . . . . Upon an agreement . . . for

the sale of real property or an interest therein.

Ariz. Rev. Stat. § 44–101(6); *Owens v. M.E. Schepp Ltd. P'ship*, 182 P.3d 664, 667 (Ariz. 2008). In Arizona, a mortgage is "an interest" in real property for purposes of the Statute of Frauds. *Freeming Const. Co. v. Sec. Sav. & Loan Ass'n*, 566 P.2d 315, 317 (Ariz. Ct. App. 1977). Therefore, if any mortgage contract existed between Plaintiffs and Defendant it must be in writing and signed by the debtor, i.e. the Plaintiffs.

Plaintiffs allege in Paragraph 12 that, on or about August 8, 2011, they submitted the original, signed promissory note, the original, signed loan agreement, the original, signed notice of non-oral agreement, the original, signed initial escrow account disclosure, and the borrowers' proof of required hazard insurance to Defendant. (Doc. 27 at 4). This is a well-pleaded factual allegation that the Court accepts as true and that appears to satisfy the Statute of Frauds requirement of a signed writing. However, the FAC does not allege the contents of these signed writings, nor that there was an offer, an acceptance, and consideration; therefore, the Court is unable to conclude that an enforceable mortgage contract exists.

The FAC fails to affirmatively plead that a valid and binding mortgage agreement was reached and executed by the parties. Without a valid contract there can be no breach of that contract. Accordingly, Plaintiffs have failed to allege sufficient facts that they have a breach of contract claim against Defendant which is "plausible on its face" under the *Twombly* and *Iqbal* standard.

### C.    Breach of Covenant of Good Faith and Fair Dealing Claim

"Under Arizona law, the covenant of good faith and fair dealing is implied in every contract, and the 'duty arises by virtue of a contractual relationship.'" *Silving v. Wells Fargo Bank, NA*, 800 F.Supp.2d 1055, 1070 (D. Ariz. 2011) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* at 1071. "Accordingly, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to."

*Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. Ct. App. 2004). Here, the parties did not finalize an agreement to do anything because no contract existed. No duty was created because there was no right created for either party. Without a duty, Defendant could not breach the covenant of good faith and fair dealing alleged by Plaintiffs. Accordingly, Plaintiffs have failed to allege sufficient facts that they have a breach of covenant of good faith and fair dealing claim against Defendant which is "plausible on its face" under the *Twombly* and *Iqbal* standard.

### III.   DEFENDANT'S MOTION TO STRIKE

Defendant filed a Motion to Strike Plaintiffs' Response as Untimely (Doc. 32). Defendant contends that the Response is impermissible according to LRCiv 7.2 because of its untimeliness. (*Id.*) The Court, by this Order, is granting Defendant's Motion to Dismiss; therefore, the Motion to Strike is denied as moot.

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 30) is granted. The Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 32) is denied as moot.

Dated this 20th day of August, 2013.

James A. Teilborg
Senior United States District Judge